COLLOTON, Circuit Judge,
concurring in the judgment.
In his “as applied” challenge to Fayette-ville’s prohibition on flashing or blinking signs, John LaTour contends that it is impermissible under the First Amendment for the city to make one exemption to its overall ban by allowing time-and-temperature signs without advertising matter, while precluding him from operating a flashing sign on which he wishes to post various political and religious (and perhaps commercial) messages. The district court *1098 explained that the time-and-temperature signs at issue use no more than four characters, and that the alternating information on the signs need not be read together to gather meaning — that is, the current time has meaning independent of the current temperature.
LaTour, by contrast, wishes to display at least some longer messages that require several different displays to complete the statement on his sign, which has a 21-character capacity. (Add., Tab K, at 2). A passing motorist would thus be required to watch the sign long enough to read more than one of the alternating displays from LaTour’s sign to perceive the meaning of the message communicated. As a result, LaTour’s longer messages pose a greater distraction and traffic hazard than typical time-and-temperature signs, and to this extent, I agree with Judge Melloy’s analysis as to why the distinction between the two varieties of signs is justified by concerns of traffic safety without reference to the content of the regulated speech. See Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). Indeed, there is no showing that the time-and-temperature exemption would be available to a sign that required multiple displays to generate the same substantive “content” as the four-character signs that were found to be exempt, to wit: “The current time is ten thirty-nine in the morning, and the current temperature is sixty-eight degrees Fahrenheit and twenty degrees Celsius.”
The more difficult question arises with regard to LaTour’s apparent desire to flash messages that are short enough to appear in a single display, such as “recall-coody.com” or, as he hypothesizes in his brief on appeal, “Vote for Smith” and “Secure Liberty.” Although the familiarity of a time-and-temperature sign may permit a motorist to absorb that message in a quick glance, while an unexpected reference to recalling an unfamiliar elected official may require longer mental concentration, the difference in threats to traffic safety between the two signs, standing alone, is less pronounced than in the case of the multi-screen display.
The stronger content-neutral justification for limiting the exemption to traditional time-and-temperature signs is the city’s legitimate interest in preventing unlimited proliferation of flashing and blinking signs throughout Fayetteville. The district court found that only two time-and-temperature displays exist in the city (Add., Tab K, at 24), although LaTour asserts that such signs have been permitted for thirty years, (Reply Br. at 11), and the court found that time-and-temperature signs without advertising matter are thus unlikely to proliferate. (Add., Tab K, at 24). If the city were to permit one flashing sign saying, “Vote for Smith” and “Secure Liberty,” however, it would not be feasible thereafter to limit the proliferation of flashing signs without impermissibly favoring one side of a public question or limiting the permissible subjects for public debate. See City of Ladue v. Gilleo, 512 U.S. 43, 51, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994). LaTour himself has predicted that flashing and blinking signs will proliferate if the signs are allowed to include opinions and ideas, (Add., Tab K, at 24), and while there was apparently no evidence available on this hypothetical question, the district court perceived a “sounder basis for believing” that proliferation of political, religious, and commercial signs would occur. See also Members of City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 817, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984) (ordinance justified by finding that if signs were permitted to remain, they “would encourage others to post additional signs”). I thus find this situation distinguishable from the Supreme Court’s “narrow” holding in City of Cincinnati v. Dis *1099 covery Network, Inc., 507 U.S. 410, 428, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993), where the city’s prohibition of certain newsraeks had “only a minimal impact on the overall number of newsraeks on the city’s sidewalks,” id. at 418, 113 S.Ct. 1505, and the ordinance thus lacked a content-neutral justification. Id. at 429-30, 113 S.Ct. 1505.
The Supreme Court in Gilleo assumed, arguendo, the validity of the city’s argument that an interest in avoiding unlimited proliferation of signs, with its attendant contribution to visual clutter and damage to aesthetics, made an exemption to a general prohibition on signs free from impermissible content discrimination. 512 U.S. at 52-53, 114 S.Ct. 2038. The Court then found the city’s ordinance unconstitutional on other grounds, because it “almost completely foreclosed a venerable means of communication that [was] both unique and important.” Id. at 54, 114 S.Ct. 2038. Unlike the aggrieved citizen in Gilleo, LaTour does not contend that the city’s prohibition on flashing signs is unconstitutional because it prohibits too much speech. LaTour remains free to post painted or other static signs in his window, or to display an electronic sign that changes messages every three hours. (Add., Tab K, at 3). In light of the city’s legitimate and substantial concerns with traffic safety and aesthetics, and the other avenues of expression that remain available to LaTour, the general ban on flashing signs is not challenged. In his constitutional arguments on appeal, LaTour asserts only that the prohibition is underinclusive.[5]
Reaching the issue assumed in Gilleo, I conclude that prevention of proliferation of flashing signs is a content-neutral justification for the distinction made by Fayetteville between LaTour’s proposed signs, which are likely to trigger proliferation, and time-and-temperature signs, which are not. A proliferation of flashing and blinking signs undoubtedly would interfere with Fayetteville’s substantial interests in traffic safety and aesthetics. A motorist who encounters dozens of flashing signs on a wide range of ever-changing topics is likely to be more distracted than a driver who might steal a quick glance at a familiar sign displaying the current temperature. An interest in avoiding the visual clutter that would be created by a multiplicity of flashing signs is likewise substantial enough to justify avoiding the sort of proliferation that LaTour’s activity would invite. See Taxpayers for Vincent, 466 U.S. at 816-17, 104 S.Ct. 2118 (upholding prohibition of posting signs on public property based on interest in avoiding visual clutter). I thus conclude that Fayetteville’s decision to create only a de minimis exemption for flashing time-and-temperature signs is justified by the city’s substantial interests in aesthetics and traffic safety, and without reference to the content of the regulated speech. Cf. also Rappa v. New Castle County, 18 F.3d 1043, 1079-80 (3d *1100 Cir.1994) (Alito, J., concurring) (suggesting that where state and county enacted a general ban on outdoor signs, content-based exceptions that were “truly de minimis ” did not violate the First Amendment).
The city’s exemption for time-and-temperature signs without advertising matter does not offend the First Amendment principles with which scrutiny of underin-clusive regulation of speech is typically concerned. The city’s approach does not “attempt to give one side of a debatable public question an advantage in expressing its views to the people,” and it does not “seek to select the permissible subjects for public debate and thereby to control the search for political truth.” Gilleo, 512 U.S. at 51, 114 S.Ct. 2038 (internal quotations and ellipses omitted). The exemption does not undermine the credibility of the city’s stated reasons for prohibiting all other flashing and blinking signs. Id. at 52, 114 S.Ct. 2038. It merely allows the display of a traditional, alternating public service message that poses a negligible threat to the interests that justify the general ban. The regulatory approach is narrowly tailored to serve a significant government interest, and it leaves open ample alternative channels for communication. I do not believe the First and Fourteenth Amendments require Fayetteville to choose between either banning time-and-temperature signs or allowing unlimited flashing and blinking signs throughout the city. I therefore concur in the judgment affirming the district court.

. With respect to LaTour's evidentiary point on appeal, I conclude that the district court did not abuse its discretion. At a pretrial hearing held on May 7, 2003, La Tour proposed to introduce evidence of flashing devices at the Washington County Fair, at the University of Arkansas football stadium, at a traveling carnival staged at a local fairgrounds, and inside the Fayetteville police station. The district court held that it would not be appropriate to “hold a trial within a trial” to determine whether these flashing lights would violate the ordinance. Given LaTour’s failure to raise the issues until the week before trial, after discovery had closed, the court ruled that “to get into that now is basically fundamentally unfair,” and that "to bring in a myriad of other potential examples at the last moment ... would unduly complicate the trial, unduly extend it, and that it would tend to, rather than clarify the matter, simply to confuse it further.” (Tr. at 63-65). This ruling was a sound application of Federal Rule of Evidence 403.